1

2

3

4

5

6

7

8                                  UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DONALD HUENE,                                No.  2:11-cv-2110 JAM AC PS

12              Plaintiff,

13        v.                                      FINDINGS & RECOMMENDATIONS

14   UNITED STATES DEP'T OF THE
     TREASURE, INTERNAL REVENUE
15   SERVICE,

16              Defendant.

17

18        On November 6, 2013, the court held a hearing on the parties' cross-motions for summary

19   judgment.  Donald R. Huene appeared in pro per.  Gerald A. Role appeared for defendant.  On

20   review of the motions, the documents filed in support and opposition, upon hearing the arguments

21   of plaintiff and counsel, and good cause appearing therefor, THE COURT FINDS AS

22   FOLLOWS:

23                                       UNDISPUTED FACTS

24        On December 14, 2010, plaintiff executed an IRS Form 2848, designating his certified

25   public accountant ("CPA"), Richard L. Holland, as his power of attorney.  Huene Decl., Ex. 1,

26   ECF No. 65 at 13-14.  In March 2011, plaintiff and Mr. Holland met with IRS agent Sui E. Chan

27   at Mr. Holland's Fresno office.  Huene Decl. ¶ 3; Holland Decl. ¶¶ 3-5.  At this meeting, plaintiff

28   verbally informed the IRS agent that he was revoking his power of attorney previously granted to

                                                 1

1    Mr. Holland.  Holland Decl. ¶ 4.

2          Notwithstanding the oral revocation, plaintiff wrote multiple letters to the IRS in March

3    and April 2011 asserting that he is proceeding in propria persona, but then referring to Mr.

4    Holland as his "co-counsel" and stating that Mr. Holland can assist plaintiff in representation:

5

6      1.  On March 16, 2011, plaintiff wrote a letter to Agent Chan, stating "[y]ou do have
           authorization so that Mr. Holland, CPA, can assist me in representation."  Shelly Decl.,
7          Ex. A, ECF No. 68-3 at 5-6.

8      2.  On March 21, 2011, plaintiff wrote to Agent Chan, stating "As you know, I was not
           present during your previous meeting with R. Holland, CPA. My information would
9          indicate that you were there for about six hours and we produced documents and papers
           referable to that meeting."  Shelly Decl., Ex. B, ECF No. 68-3 at 7-8.  This letter indicates
10         that Mr. Holland received a courtesy copy of the letter.  See id. 8.

11     3.  On March 23, 2011, plaintiff wrote to Agent Chan, stating that "[a]s regards to our
12         meeting, I must have R. Holland CPA accompanying me, as I previously informed you."
           Shelly Decl., Ex. D, ECF No. 68-3 at 10-11.
13
       4.  April 7, 2011, plaintiff wrote the following to Agent Chan:
14
                      I have now received your letter of April 5, 2011, addressed to
15                    Richard L. Holland, CPA, with no copy to me. [¶] Let me reiterate,
                      perhaps clarify, my previous correspondence.  I am appearing for
16                    your audit and all present and subsequent litigation in propria
                      persona, and may have occasional a [sic] co-counsel with me at
17                    times. Consequently, you are hereby instructed to contact only me,
                      the party in propria persona.  You are free to copy Richard L.
18                    Holland, CPA as co-counsel, but I am the one that is the primary
                      contact mandated by law.
19

20   Shellnoy Decl., Ex. D, ECF No. 68-3 at 13-14.

21         Agent Chan frequently updated her supervisor, Anthony Shelly, Supervisory Internal

22   Revenue Agent with the IRS, on the progress of the case concerning plaintiff.  Shelly Decl. ¶ 3.

23   It was this last letter dated April 7, 2011 that confused Anthony Shelly because plaintiff had

24   previously filed an IRS Form 2848 designating Mr. Holland as his power of attorney for the tax

25   year under examination and he had not filed anything rescinding the power of attorney.  Shelly

26   Decl. ¶ 6.  In an attempt to clarify, Anthony Shelly and Agent Chan contacted Mr. Holland on

27   April 13, 2011 to ask whether it was indeed plaintiff's intent to revoke the power of attorney.  Id.

28   ¶ 7.  Mr. Shelly asserts that Mr. Holland told him during this contact that the power of attorney

                                          2

1    was not revoked.  Id.  Mr. Holland refutes this assertion.[1]  Holland Decl. ¶ 10.

2            On June 7, 2011, plaintiff wrote to Anthony Shelly:

3                I received a call and an email from my CPA, Richard L. Holland.
                 You apparently have not read my previous letters.  I rescinded Mr.
4                Holland's release. I also informed Ms. Chan that the only way to
                 reach me was by letter and I would respond promptly. . . . [¶] Now I
5                found that you have phone Mr. Holland despite my telling you not
                 to. . . . [¶] Because of your unauthorized communications with my
6                CPA, I am getting bills from Mr. Holland which would not have
                 existed had you not made the contact.
7
8    Shelly Decl., Ex. J, ECF No. 68-3 at 18.

9            Plaintiff wrote another letter to Anthony Shelly on July 11, 2011 regarding "a serious

10   breach of the law on [Shelly's] part."  Shelly Decl., Ex. M, ECF No. 68-3 at 24-25.  Specifically,

11   plaintiff stated:

12               As you know, I informed you by written expression that I was
                 rescinding my authorization for you to contact my C.P.A., and
13               directed you to contact me instead. The purpose was obvious: the
                 contacts by the IRS to my accountant were costing me money, and
14               those contacts were unnecessary and resulting in no resolution. In
                 spite of that letter telling you that you had (and have) no authority
15               to deal with my accountant directly, you nonetheless contacted him
                 again, and then again. You did this knowing that his time was
16               expensive, not to the IRS or you personally, but rather to me.

17           In response to this letter and because there was still confusion as to whether Mr. Holland

18   was representing plaintiff, Anthony Shelly sent a letter to Mr. Holland (with a copy to plaintiff)

19   on July 18, 2011 asking for clarification as to whether he was continuing as plaintiff's

20   representative or whether plaintiff was revoking the power of attorney.  Shelly Decl., Ex. N, ECF

21   No. 68-3 at 26-27.

22           On July 19, 2011, plaintiff responded to Mr. Shelly's letter, stating "[f]or at least the third

23   time, I am instructing you to have all further communication with me directly."  Shelly Decl., Ex.

24   O, ECF No. 68-3 at 28.

25           On July 27, 2011, Anthony Shelly sent a letter to plaintiff with instructions on how to

26   revoke a power of attorney.  Shelly Decl., Ex. P, ECF No. 68-3 at 29-35.

27   ───────────────────
     [1] This factual dispute is immaterial to the ultimate resolution of the parties' cross-motions for
28   summary judgment.

                                                    3

1    Due to the IRS agents' "contact[s]," "communications," and "conference[s]" with Mr.

2    Holland following plaintiff's oral revocation, Mr. Holland billed plaintiff $360.  Huene Decl. ¶ 6;

3    Holland Decl. ¶¶ 6-8.

4                                    PROCEDURAL BACKGROUND

5    Plaintiff filed a complaint on August 5, 2011 against the Internal Revenue Service ("IRS")

6    and Anthony Shelly pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a and 26 U.S.C. § 6103;

7    the Freedom of Information Act, 5 U.S.C. § 552; the Federal Declaratory Judgment Act, 26

8    U.S.C. § 2201; and the Civil Rights Act of 1964, 42 U.S.C. § 1983.

9    On August 27, 2012, plaintiff filed a first amended complaint asserting a single claim as to

10   the IRS alleging that one of defendant's agents, Anthony Shelly, disclosed plaintiff's tax return

11   information to his accountant in violation of 26 U.S.C. § 6103.  Plaintiff seeks damages pursuant

12   to 26 U.S.C. § 7431.

13                                       LEGAL STANDARDS

14   A principal purpose of the summary judgment procedure is to identify and dispose of

15   factually unsupported claims.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323-24 (1986).  Summary

16   judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions

17   on file, together with the affidavits, if any, show that there is no genuine issue as to any material

18   fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

19   "In considering a motion for summary judgment, the court may not weigh the evidence or make

20   credibility determinations, and is required to draw all inferences in a light most favorable to the

21   non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

22   The party moving for summary judgment bears the initial burden of identifying those

23   portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine

24   issue of material fact.  Celotex, 477 U.S. at 323.  An issue of fact is "genuine" only if there is

25   sufficient evidence for a reasonable fact finder to find for the non-moving party.  Anderson v.

26   Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  A fact is "material" if it may affect the

27   outcome of the case.  Id. at 248.  If the party moving for summary judgment does not have the

28   ultimate burden of persuasion at trial, that party must produce evidence which either negates an

4

1    essential element of the non-moving party's claims or that party must show that the non-moving

2    party does not have enough evidence of an essential element to carry its ultimate burden of

3    persuasion at trial.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir.

4    2000).  Once the moving party meets its initial burden, the non-moving party must go beyond the

5    pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue

6    for trial."  Fed. R. Civ. P. 56(e).

7         In order to make this showing, the non-moving party must "identify with reasonable

8    particularity the evidence that precludes summary judgment."  Keenan v. Allan, 91 F.3d 1275,

9    1279 (9th Cir. 1996).  In addition, the party seeking to establish a genuine issue of material fact

10   must take care adequately to point a court to the evidence precluding summary judgment because

11   a court is "'not required to comb the record to find some reason to deny a motion for summary

12   judgment.'"  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1029 (9th Cir. 2001)

13   (quoting Forsberg v. Pacific Northwest Bell Telephone Co., 840 F.2d 1409, 1418 (9th Cir.

14   1988)).  If the non-moving party fails to point to evidence precluding summary judgment, the

15   moving party is entitled to judgment as a matter of law.  Celotex, 477 U.S. at 323.

16                                    DISCUSSION

17        Plaintiff moves for judgment on his claim that the IRS improperly disclosed "tax return

18   information" to plaintiff's CPA after plaintiff orally revoked his power of attorney, in violation of

19   26 U.S.C. §6103(a).  In order to succeed in this action, plaintiff must prove that the IRS

20   "disclose[d]" a "return or return information" to an unauthorized person.  26 U.S.C. § 7431(a).

21   Each of these phrases has a particular statutory definition, as set forth in Section 6103.  Section

22   6103 defines a "disclosure" as "the making known to any person in any manner whatever a return

23   or return information."  26 U.S.C. § 6103(b)(8).  Plaintiff must also prove that the information

24   provided was either a "return" or "return information" as defined by 26 U.S.C. § 6103.  26 U.S.C.

25   § 7431(a)(1).  A "return" for purposes of section 6103 means:

26            [A]ny tax or information return, declaration of estimated tax, or
              claim for refund required by, or provided for or permitted under, the
27            provisions of this title which is filed with the Secretary by, on
              behalf of, or with respect to any person, and any amendment or
28            supplement thereto, including supporting schedules, attachments, or

                                              5

1    lists which are supplemental to, or part of, the return so filed.

2    26 U.S.C. § 6103(b)(1).  Section 6103 defines "Return information" as:

3              [A] taxpayer's identity, the nature, source, or amount of his income,
               payments, receipts, deductions, exemptions, credits, assets,
4              liabilities, net worth, tax liability, tax withheld, deficiencies,
               overassessments, or tax payments, whether the taxpayer's return
5              was, is being, or will be examined or subject to other investigation
               or processing, or any other data, received by, recorded by, prepared
6              by, furnished to, or collected by the Secretary with respect to a
               return or with respect to the determination of the existence, or
7              possible existence, of liability (or the amount thereof) of any person
               under this title for any tax, penalty, interest, fine, forfeiture, or other
8              imposition, or offense [ . . . ]

9    26 U.S.C. § 6103(b)(2)(A).

10   A.       Validity of Oral Revocation

11           Plaintiff moves for summary judgment on his claim that his March 2011 oral revocation

12   was valid.  In support, plaintiff relies on the California Probate Code and Karen Rush v. JLJ, Inc.,

13   988 F.2d 1112 (11th Cir. 1993), which discusses Alabama law.

14           Defendant moves for judgment on the ground that a revocation of a power-of-attorney

15   must be in writing pursuant to IRS regulations, and therefore plaintiff's oral revocation was

16   invalid.

17           The Secretary of the Internal Revenue Service is delegated with the authority to prescribe

18   "all needful rules and regulations for the enforcement of Title 26."  26 U.S.C. § 7805; see also 26

19   U.S.C. § 7801.  Pursuant to that authority, the Secretary promulgated 26 C.F.R. § 601.503(a),

20   which states that a power of attorney must be in writing and must contain the following

21   information:

22              (1) Name and mailing address of the taxpayer;

23              (2) Identification number of the taxpayer (i.e., social security
                number and/ or employer identification number);
24
                (3) Employee plan number (if applicable);
25
                (4) Name and mailing address of the recognized representative(s);
26
                (5) Description of the matter(s) for which representation is
27              authorized which, if applicable, must include—

28                   (i) The type of tax involved;

6

(ii) The Federal tax form number;

(iii) The specific year(s)/period(s) involved; and

(iv) In estate matters, decedent's date of death; and

(6) A clear expression of the taxpayer's intention concerning the scope of authority granted to the recognized representative(s).

A properly completed Form 2848 satisfies this requirement, as does another document that provides the same information. See 26 C.F.R. § 601.503(b). This power-of-attorney form must be signed by the individual taxpayer. Id. § 601.503(c)(1). On December 14, 2010, plaintiff submitted a signed Form 2848 to designate his CPA as his power of attorney. See Pl.'s Mot. Summ. J., Ex. 1, ECF No. 65 at 13-14.

Pursuant to 26 C.F.R. § 601.505(a)(2), a revocation of a power of attorney must also be in writing:

A taxpayer may revoke a power of attorney without authorizing a new representative by filing a statement of revocation with those offices of the Internal Revenue Service where the taxpayer has filed the power of attorney to be revoked. The statement of revocation must indicate that the authority of the first power of attorney is revoked and must be signed by the taxpayer. Also, the name and address of each recognized representative whose authority is revoked must be listed (or a copy of the power of attorney to be revoked must be attached).

The language of this regulation is mirrored in the Internal Revenue Manual § 4.11.55.1.9.

Plaintiff argues that the Internal Revenue Manual's directive for a written revocation violates black letter law. In support, plaintiff cites only to California and Alabama law, neither of which is controlling here. Insofar as plaintiff is arguing that an oral revocation is valid in other contexts, the fact remains that in this context, the IRS regulation specifically directs that a revocation of a power of attorney must be in writing. Moreover, to the extent plaintiff's motion can be construed as a challenge to the Secretary of the Treasury's authority to promulgate regulations or as an argument that the regulation at issue, 26 C.F.R. § 601.505(a)(2), is arbitrary or capricious, see Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 419 (1993), plaintiff presents no legal argument in support. See Pl.'s Mot. Summ. J 7:12-14.

Accordingly, based on the undisputed facts and the IRS regulation that a revocation of a

1    power of attorney must be in writing, the court finds as a matter of law that plaintiff's oral

2    revocation is invalid.  Accordingly, plaintiff's motion for summary judgment should be denied

3    and defendant's motion should be granted as to this issue.

4    B.        Identification of Information Disclosed

5            Even if the oral revocation were valid, summary judgment should nonetheless be entered

6    for defendant because plaintiff does not identify what tax return information was disclosed to his

7    CPA.  As plaintiff is proceeding under 26 U.S.C. § 6103, he must submit evidence of the

8    disclosure of "return or return information."  But the evidence before the court establishes only

9    that the IRS made "contact" and had "communications" and "conference[s]" with the CPA after

10   the oral revocation.  See Pl.'s Mot. Summ. J. 5; see also Huene Decl. ¶ 6; Shelly Decl. ¶¶ 7, 10.

11   Anthony Shelly declares that these contacts were an attempt to clarify whether plaintiff intended

12   to revoke Mr. Holland's power of attorney.  Shelly Decl. ¶¶ 7, 10.  None of this evidence

13   establishes the disclosure of "return or return information."

14           The greatest detail regarding the nature of information disclosed to Mr. Holland appears in

15   the first amended complaint, wherein plaintiff accuses the IRS in general terms of unlawfully

16   disclosing his "tax return information," FAC ¶ 5,[2] but "return information" has a carefully

17   delimited statutory definition, see 26 U.S.C. § 6103(b)(2)(A).  Plaintiff presents no affidavits or

18   other evidence identifying the information allegedly disclosed, and he states only that he was

19   billed by his CPA after "conferences the IRS had with my CPA."  Huene Decl. ¶ 6.  In light of

20   plaintiff's broad and unspecific allegation that his "return information" was disclosed, summary

21   judgment should be entered for defendant for failure of proof.[3]

22   ////

23   _____

24   [2] "Agent Shelley freely, without legal or factual authorization, disclosed the Plaintiff's tax
     information and did it in connection with his service as an employee of the U.S. Department of
     treasury, Internal Revenue Service.  He knowingly and negligently disclosed he Plaintiff's tax

25   return information in the expressed unauthorized free-flow discussion that he initiated with the
     accountant causing civil damages to be incurred by the Plaintiff."  Id.

26   [3] In light of plaintiff's complete failure of proof, the court finds it unnecessary to reach

27   defendant's third ground for summary judgment that, if plaintiff's oral revocation had been
     effective and return information had been disclosed, such disclosures would have been authorized

28   bylaw or made in good faith.

                                                8

1    C.    Judgment Independent of the Motion

2         Lastly, plaintiff must also establish that the IRS in fact *disclosed* the information at issue,

3    with "disclosure" being defined as "the making known to any person in any manner whatever a

4    return or return information."  26 U.S.C. § 6103(b)(8).  Several courts have interpreted the phrase

5    "the making known" as requiring the imparting of information to a person to whom that

6    information was previously unknown.  See Brown v. United States, 755 F. Supp. 285, 287 (N.D.

7    Cal. 1990); Elias v. United States, 1990 WL 264722, at *7 n.14 (C.D. Cal. Dec. 21, 1990), aff'd

8    by 974 F.2d 1341 (9th Cir. 1992); Haywood v. United States, 642 F. Supp. 188, 192 (D. Kan.

9    1986); Pflum v. United States, 2007 WL 1651290, at *6 (D. Kan. June 6, 2007); Calhoun v.

10   Wells, 1980 WL 1637, at *3 (D.S.C. July 30, 1980) ("Only information previously unknown to

11   the person to whom it is imparted may be the subject matter of a 'disclosure' under this section;

12   i.e. you cannot 'disclose' information that is already known."); contra Mallas v. United States,

13   993 F.2d 1111, 1121, n.10 (4th Cir. 1993) (rejecting argument that no "disclosure" had occurred

14   where plaintiff had already provided recipients with information alleged to have been disclosed

15   by the government defendants); but see Miller v. United States, 66 F.3d 220, 223 (9th Cir. 1995)

16   (declining to follow Mallas).  For instance, if an employer already knows a taxpayer's name and

17   social security number, providing that information to the employer again is not "making known"

18   anything and is thus not a "disclosure."  Haywood, 642 F. Supp. at 192; see also Brown, 755 F.

19   Supp. at 287 (citing Haywood).  The court finds this interpretation to be in keeping with the plain

20   meaning of the phrase to "mak[e] known."  Accordingly, in order to prove that a disclosure

21   occurred, plaintiff must prove that the information provided to the CPA was previously unknown

22   to him.  As plaintiff has failed to identify what information was in fact disclosed to the CPA, he

23   necessarily fails to meet the disclosure requirement as well.

24        "District courts unquestionably possess the power to enter summary judgment sua sponte,

25   even on the eve of trial."  Norse v. City of Santa Cruz, 629 F.3d 966, 971 (9th Cir. 2010) (en

26   banc); see also Cool Fuel, Inc. v. Connett, 685 F.2d 309, 312 (9th Cir. 1982) (holding that district

27   courts may grant summary judgment sua sponte if the parties have had a "full and fair opportunity

28   to ventilate the issues").  Rule 56(f)(3) of the Federal Rules of Civil Procedure provides that the

1   court may consider and grant summary judgment on its own motion after providing the parties

2   fair notice and a reasonable time to respond.  The court hereby notifies the parties that it is

3   recommending the entry of summary judgment for defendant under Rule 56(f), in light of

4   plaintiff's failure of proof regarding the disclosure of information to the CPA.

5          Based on the foregoing, IT IS HEREBY RECOMMENDED that:

6       1.  Plaintiff's motion for summary judgment (ECF No. 65) be denied;

7       2.  Defendant's cross-motion for summary judgment (ECF No. 68) be granted;

8       3.  Summary judgment be entered for defendant on the alternative ground specified

9          above, pursuant to Federal Rule of Civil Procedure 56(f)(3).

10       These findings and recommendations are submitted to the United States District Judge

11   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

12   after being served with these findings and recommendations, any party may file written

13   objections with the court and serve a copy on all parties.  Such a document should be captioned

14   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

15   objections shall be served and filed within fourteen days after service of the objections.  The

16   parties are advised that failure to file objections within the specified time may waive the right to

17   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18   DATED: November 7, 2013

19

20                    ALLISON CLAIRE

                       UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28